UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-12538-RGS

DONALD LASSMAN, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY
ESTATE OF ROBERT MAFFEO, JR.

v.

ROBERT MAFFEO, JR., AND MELISSA MAFFEO

MEMORANDUM AND ORDER ON AN
APPEAL FROM THE BANKRUPTCY COURT'S
DENIAL OF APPELLANTS' MOTION TO DISMISS

December 30, 2025

STEARNS, D.J.

In this bankruptcy appeal, appellants Robert Maffeo, Jr., (Maffeo) and Melissa Maffeo (Melissa) ask this court to reverse the Bankruptcy Court's denial of their motion to dismiss appellee Donald Lassman's Complaint. *See* Appellants' Br. [Dkt #5] at 9. Appellee, the Chapter 7 Trustee of appellant Maffeo's bankruptcy estate (the Trustee), alleges in his Complaint (filed in the Bankruptcy Court on November 7, 2023) that a home at 86 Norwich Street, Marshfield, Massachusetts (the Property), was legally part of Maffeo's bankruptcy estate. Adversary Compl. [Dkt #6 at 1-9] ¶¶ 9, 28. Maffeo, the

settlor and trustee of the Maffeo Family Realty Trust (the Trust),[1] purported to hold the Property in the Trust for the benefit of his daughter, defendant Melissa, at the time Maffeo's bankruptcy petition was filed. *Id.* ¶¶ 11, 19. However, the Trustee contends that the Trust was a sham because it was, in reality, created for the express purpose of insulating from creditors a Property that Maffeo intended for his own benefit. *Id* ¶ 27.

In December of 2023, Maffeo filed a motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), which the Bankruptcy Judge denied, after full briefing and hearing on the matter, in September of 2024. *See* Tr. of Sept. 2024 Hr'g on Mot. to Dismiss [Dkt #6 at 488-503] at 14. Subsequently, in May of 2025, after discovery closed, the Trustee moved for summary judgment, which defendants opposed, and the Bankruptcy Court granted, after a hearing, in August of 2025. *See* Tr. of Aug. 2025 Oral Rulings on Mot. for Summ. J. [Dkt # 6 at 528-545] at 16. The Bankruptcy Court agreed with the Trustee that the Trust was bogus, and that the bankruptcy estate was entitled to the imposition of a resulting trust restoring the Property to the estate. *Id.* at 16-17.

---

[1] The Trust was named as a defendant, along with Maffeo and Melissa, in the Complaint.

Appellants now appeal the Bankruptcy Court's denial of their motion to dismiss and, by implication, the grant of summary judgment to the Trustee.[2] They assert that, while the Complaint alleges that the creation of the Trust was a sham transaction, the facts in the Complaint instead limn the elements of a fraudulent transfer. Appellants argue that the Bankruptcy Judge should have allowed the motion to dismiss under Fed. R. Civ. P. 12(b)(6) because the statute of limitations had run on any possible fraudulent transfer claim. Appellants' Br. at 5-8. For the following reasons, the Bankruptcy Court's Order denying the appellants' motion to dismiss is affirmed.

## BACKGROUND

The following facts are drawn from the Complaint and the pleadings before the Bankruptcy Court. The Property was conveyed to Maffeo by his parents in 1990. Adversary Compl. ¶ 9. In 1997, Maffeo conveyed the Property to himself and his wife as tenants by the entirety. *Id.* ¶ 10. In 2002, following the death of Maffeo's wife, he created the Trust for the sole benefit

---

[2] Appellants' notice of appeal indicated their intention to appeal both the September 1, 2024 Order denying the motion to dismiss and the August 20, 2025 Order granting summary judgment. Notice of Appeal [Dkt #1] at 1-2. However, their appellate brief addresses only the Bankruptcy Judge's denial of their motion to dismiss.

of his daughters, Megan Maffeo and appellant Melissa Maffeo, naming himself as the trustee, and he conveyed the Property to the Trust. *Id.* ¶¶ 11-13.

In his capacity as trustee, Maffeo repeatedly transferred the Property in and out of the Trust: He conveyed the Property to himself in January of 2003, and then reconveyed the Property back to the Trust in October of 2003.[3] Adversary Compl. ¶¶ 14-15. In March of 2004, he conveyed the Property back to himself and pledged it as collateral on a mortgage to secure a promissory note for $255,000.[4] *Id.* ¶ 16. In July of 2004, he conveyed the Property back to the Trust a final time. *Id.* ¶ 17. In September of 2022, the Trust was amended to designate Melissa as its sole beneficiary. *Id.* ¶ 19.[5]

---

[3] Appellants' brief includes additional facts regarding this period, which are part of the record on appeal. Their brief states that Maffeo executed a mortgage on the Property to secure a loan for $172,000 in January of 2003, and a second loan for $204,000 in July of 2003. Appellants' Br. at 4.

[4] While the Complaint states that this event took place in March of 2004, appellants' brief dates this event in February of 2004. Appellant's Br. at 4.

[5] The Complaint states that, currently, the Property "has a tax assessed value of $366,600 and it is encumbered by a mortgage . . . which secures an outstanding balance of approximately $220,000." *Id.* at 20.

The Complaint includes additional facts taken from Maffeo's testimony during a Section 341 creditors' meeting, held on April 5, 2023. *Id.* ¶ 21. Maffeo testified that the first time he conveyed the Property to the Trust, he did so "as a safety precaution" as he did not want to "lose everything to creditors." *Id.* ¶ 22. He also testified that he resides alone at the Property, that he has lived there since 1980, and that he pays its mortgage, real estate taxes, insurance payments, and other expenses. *Id.* ¶ 23. The Complaint further alleges that, based on Maffeo's testimony, he "took the deductions for the interest payments on his mortgage and the real estate taxes." *Id.* ¶ 24.

Based on these facts, the Complaint alleges that "[t]he Debtor did not convey the Marshfield Property to the Trust with the intention of making a gift to the Trust beneficiaries, but instead made the various transfers to and from the Trust . . . for his own personal benefit." *Id.* ¶ 27. The Complaint sought a declaratory judgment that the Property comprised part of the debtor's estate pursuant to 11 U.S.C. § 541. *Id.* ¶¶ 25-26. It also sought the imposition of a resulting trust for the benefit of the estate and the turnover of the Property pursuant to 11 U.S.C. § 542. *Id.* ¶¶ 28-31.

## LEGAL STANDARD

On appeal, the findings of fact by the Bankruptcy Court are reviewed for clear error; rulings of law are subject to plenary review. *In re Winthrop*

*Old Farm Nurseries, Inc.*, 50 F.3d 72, 73 (1st Cir. 1995). This case presents mixed issues of fact and law. To the extent that the Bankruptcy Judge's decision involves consideration of the opposing motions for brevis dispositions, "[t]he legal standards traditionally applicable to motions for summary judgment and motions to dismiss apply without change in bankruptcy proceedings." *In re Moultonborough Hotel Grp.,* LLC, 726 F.3d 1, 4 (1st Cir. 2013).

## DISCUSSION

A trust is valid under Massachusetts law if it "unequivocally show[s] an intention that the legal estate be vested in one person to be held in some manner or for some purpose on behalf of another." *Ventura v. Ventura,* 407 Mass. 724, 726 (1990), quoting *Cooney v. Montana,* 347 Mass. 29, 35 (1964). In the context of an express trust, courts ascertain this intention based on the language of the trust instrument "considered in the light of the attendant circumstances." *Id.,* quoting *Harrison v. Marcus,* 396 Mass. 424, 429 (1985).

In this case, the validity of the Trust instrument's language is not disputed. Instead, the Complaint alleges external circumstances that satisfied the Bankruptcy Judge that, despite his declarations of trust, Maffeo created the Trust for his own purposes rather than for the benefit of his

6

daughters. Specifically, he testified that he had initially transferred the Property to the Trust in 2002, to protect it from potential creditors. Prior to and since that time, Maffeo has lived continuously at the Property and treated it as a personal asset, shuffling it in and out of the Trust to finance his borrowings. As the Bankruptcy Judge concluded, the overwhelming weight of the undisputed and plausibly alleged facts supports the Trustee's contention that the Trust was a sham from its inception.

Appellants argue that the Complaint "made out a fraudulent transfer claim," rather than a case questioning the legitimacy of the Trust, and that the four-year Massachusetts statute of limitations has run on fraud for which they are liable. Appellants' Br. at 6-7. Appellants further argue that – given their view that the Trustee's Complaint alleges a fraudulent transfer claim – the court "should not permit the Trustee [appellee] to select an equitable remedy when a statutory remedy would have been available, but for the statute of limitations." Appellants' Br. at 8.

Appellants' argument falters at the starting gun. The Uniform Fraudulent Transfer Act (UFTA) provides only a remedy for an independently valid claim; it does not itself create a claim. *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 154 (2013). By its express terms, the UFTA requires an intent to conceal property from an *existing* claim or judgment.

7

*See* Mass. Gen. Laws. ch. 109A, § 6(a) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation"); *Alford v. Thibault*, 83 Mass. App. Ct. 822, 828 (2013) ("A transfer, even if made with intent to defraud, is not deemed fraudulent in fact unless there has been a resulting diminution of the assets available to the creditor."); *see also AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248, 250 (1st Cir. 2013).

    Here, the most that can be said is that Maffeo created the Trust and transferred the Property into its corpus not for the purpose of hindering or delaying an existing creditor but as insurance against future claims should his borrowing end up badly (as it did). Consequently, the UFTA does not apply. Even if protecting property from potential creditors is a valid purpose for its transfer (in some circumstances it may well be) the issue here is not the legitimacy of the initial and subsequent transfers of the Property but whether the Trust was a fraud from its inception — which the Bankruptcy Judge correctly found that it was.

8

## ORDER

For the foregoing reasons, the Bankruptcy Judge's order denying the motion to dismiss is <u>AFFIRMED</u> and the appeal is <u>DISMISSED</u>. The Clerk will return the case to the Bankruptcy Court for further proceedings.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE